The Honorable Kevin Goss State Representative 26 Union Street Wilson, AR 72395-1418
Dear Representative Goss:
I am writing in response to your request for my opinion on the following question:
 With regard to Act 1409 of 2005, concerning the approval of motor vehicle racing facilities, if a petition is developed in an area in which a significant number of the residents have moved from the area, but are still registered voters of the area; should the petition have 75% of the current residents' signatures who are also registered voters or will the percentage still be figured based on the total registered voters, which includes those that are no longer residents of the area?
RESPONSE
In my opinion, Act 1409 of 2005 requires that at least 75% of voters registered as residing within three miles of a proposed motor vehicle racing track must approve construction of the facility. Act 1409 sets forth no procedure for testing whether voters registered as living within this perimeter in fact do so, and I do not believe the legislature intended to authorize looking behind the voter-registration records in order to establish actual residency.
Act 1409 provides as follows:
For An Act To Be Entitled
 AN ACT CONCERNING APPROVAL OF MOTOR VEHICLE RACING FACILITIES; AND FOR OTHER PURPOSES.
Subtitle
AN ACT CONCERNING APPROVAL OF MOTOR VEHICLE RACING FACILITIES.
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code § 8-10-302(a)(1), concerning construction of motor vehicle racing facility, is amended to read as follows:
 (a)(1) Due to the noise, air pollution, and traffic congestion caused by motor vehicle racing facilities, no motor vehicle racing facility may be constructed in this state after passage of this act without the consent of at least seventy-five percent (75%) of the property owners and seventy-five percent (75%) of the adult residents registered voters within three (3) miles of the outside boundary of the proposed facility.
 SECTION 2. Arkansas Code § 8-10-303(a)(1)(A), concerning permits for motor vehicle racing facilities, is amended to read as follows:
 (a)(1)(A) Due to the noise pollution and air pollution from the racing vehicles and traffic congestion caused by motor vehicle racing facilities, no motor vehicle racing facility shall be constructed in this state after passage of this section without the consent of at least seventy-five percent (75%) of the property owners and seventy-five percent (75%) of the adult residents registered voters within three (3) miles of the outside boundary of the proposed facility and without an annual permit issued by the Arkansas Department of Environmental Quality.
APPROVED: March 30, 2005
As reflected above, Act 1409 did no more than substitute for the term "adult residents" the term "registered voters." In interpreting this change, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292
(2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686
(1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v.State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis,335 Ark. 188, 979 S.W.2d 894 (1998).
Applying these rules, I am struck by the fact that the phrase "seventy-five percent (75%) of the registered voters within three (3) miles of the outside boundary of the proposed facility" is absolutely unambiguous in its meaning. It does not denote "adult residents" within this perimeter — or, for that matter, "adult residents registered to vote"; rather, it denotes voters registered as residing within the described territory. Indeed, in striking the term "adult residents" and substituting therefor the term "registered voters," the legislature appears to have acknowledged that determining the actual number of adult residents, whether registered to vote or not, within a given area is unduly difficult and likely to create confusion. In my opinion, the amendment reflects the legislature's willingness to refer the issue of constructing racetracks to a readily discernible group of people — namely, "registered voters." I realize that this determination may result in some demographic inaccuracies of the sort described in your request. Nevertheless, in my opinion, the legislature has spoken clearly on this issue.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh